UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEVIN SHORT, <br><br> Plaintiff, <br><br> v. <br><br> MV TRANSPORTATION, INC., <br><br> Defendant. | No. 24 CV 3019 <br><br> Judge Manish S. Shah |

MEMORANDUM OPINION AND ORDER

Plaintiff Kevin Short applied to work as a driver for defendant MV Transportation, Inc. He alleges that MV Transportation violated the Illinois Genetic Information Privacy Act by requesting protected genetic information as a part of the application process. MV Transportation moves to dismiss the amended complaint. For the reasons discussed below, the motion is denied.

I. Legal Standards

A complaint must contain "a short and plain statement" showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege facts that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). At this stage, I accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor, disregarding legal conclusions or "[t]hreadbare recitals" supported by only "conclusory statements." *Iqbal*, 556 U.S. at 678. On a Rule 12(b)(6) motion, I may consider only allegations in

the complaint or documents that are "(1) referenced in the plaintiff's complaint, (2) concededly authentic, and (3) central to the plaintiff's claim." *Fin. Fiduciaries, LLC v. Gannett Co.*, 46 F.4th 654, 663 (7th Cir. 2022).

Preemption is an affirmative defense, and a plaintiff is not required to plead around it. *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 645 (7th Cir. 2019). Dismissal under Rule 12(b)(6) is appropriate only when a plaintiff has pleaded himself out of court. *Id.*

## II. Background

### A. Short's Employment Application

MV Transportation, Inc. provides paratransit services. [23] ¶ 1.[1] Kevin Short applied to work as a driver for MV Transportation. [23] ¶ 26. MV Transportation required Short to submit to a physical examination as a part of the application process. [23] ¶ 27. During the examination, Short was asked orally to answer questions about his family medical history, including whether his family members had a history of high blood pressure, heart disease, diabetes, or other medical conditions. [23] ¶ 28. In response, Short disclosed information about inheritable diseases and disorders that his family members had been diagnosed with. [23] ¶ 29. Short alleges that MV Transportation's oral request for his family medical history

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from plaintiff's amended complaint, [23].

violated Section 25(c)(1) of the Illinois Genetic Information and Privacy Act. [23] ¶¶ 44–45. Defendant now moves to dismiss the amended complaint. [26].[2]

## B. Additional Exhibits

MV Transportation attaches two exhibits to its motion to dismiss: Short's medical examination report form and his health screening result. [27]; [28].[3] Short does not dispute the authenticity of the medical forms but objects because his claim is based on an oral request for information that would not be reflected in these forms. [31] at 6. Short's employment application and physical examination are both referenced in his complaint and central to his claim, so I consider the documents

---

[2] Carlos Ousley-Brown initiated this case by filing a putative class action in the Circuit Court of Cook County. [1-1]. MV Transportation removed the action to this court invoking diversity jurisdiction under the Class Action Fairness Act. [1]; 28 U.S.C. §§ 1332(d), 1441, 1446. A court has subject-matter jurisdiction over state-law claims under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), if "(1) a class has 100 or more class members; (2) at least one class member is diverse from at least one defendant; and (3) there is more than $5 million, exclusive of interest and costs, in controversy in the aggregate." *Roppo v. Travelers Com. Ins. Co.*, 869 F.3d 568, 578 (7th Cir. 2017). CAFA jurisdiction existed at the time of removal because the then-plaintiff alleged that the class includes more than 100 class members; minimal diversity was satisfied because the plaintiff at the time of removal was a citizen of Illinois and defendant is a citizen of California and Texas; and the amount in controversy alleged exceeds $5,000,000. [1] ¶¶ 9, 11, 13–14, 16–19; [23] ¶ 11; *see Blomberg v. Serv. Corp. Int'l*, 639 F.3d 761, 763 (7th Cir. 2011) (a removing party's "good-faith estimate" of the amount in controversy need only be plausible and supported by evidence). Defendant moved to dismiss the initial complaint. [15]. Plaintiff filed an amended complaint as a matter of course, *see* Fed. R. Civ. P. 15(a)(1)(B), substituting Kevin Short as the plaintiff. [23]. The amended complaint refers to Short's residence in Illinois, which does not establish his citizenship. [23] ¶ 11. But defendant alleged in its notice of removal that there are likely 280 putative class members who submitted to physical examinations in Illinois. [1] ¶¶ 11, 16. Defendant also attached an affidavit alleging Ousley-Brown's Illinois citizenship. [1-2]. Because Ousley-Brown is a citizen of Illinois and remains a putative member of the class, minimal diversity under CAFA is satisfied. *See Dancel v. Groupon, Inc.*, 940 F.3d 381, 384–85 (7th Cir. 2019) (affidavits supplementing the record to identify a specific, diverse class member are sufficient to support minimal diversity).

[3] The documents are under seal because of Short's health privacy interests, and I reference only the non-private contents of the documents relevant to deciding the motion.

related to the exam as a part of the record. But all they demonstrate is that Short was subject to a medical evaluation in compliance with the Federal Motor Carrier Safety Administration's regulations. *See* [27] at 2–7.

Defendant requests that I take judicial notice of: (1) the company's 563-page contract with the City of Chicago;[4] (2) the company's DOT registration on the FMCSA's website;[5] and (3) the 120-page "Medical Examiner's Handbook" issued by the Federal Motor Carrier Safety Administration's National Registry of Certified Medical Examiners.[6] [26] at 2 n.2, 3, 4 n.4. I decline to take notice of these external materials. While Short does not object to their authenticity, these materials are neither referenced in his amended complaint nor central to his GIPA claim. The company's PACE contract and its publicly available DOT registration demonstrate the applicability of federal regulations to Short's medical examination, but Short is the master of his own complaint, and these documents are not necessary to understand his allegations. Defendant argues that the FMCSA's handbook contemplates "the importance of a driver's family history in assessing potential cardiovascular risk" and is therefore relevant to Short's medical examination results. [26] at 10; [34] at 2. At this stage of the case, that's neither here nor there. Guidance

---

[4] *See* PACE Contract (Dec. 26, 2019), https://www.pacebus.com/sites/default/files/2020-06/229873_419292_MV%20Transportation_Chicago%20ADA%20Paratransit%20Svc_js2.pdf [https://perma.cc/9ZVQ-E9VN].

[5] *See* FMCSA, Safer Company Snapshot for MV Transportation (last visited Mar. 10, 2025), https://safer.fmcsa.dot.gov/CompanySnapshot.aspx [https://perma.cc/3MMS-NDXZ].

[6] *See* FMCSA, Medical Examiner's Handbook 2024 Edition (Jan. 22, 2024), https://www.fmcsa.dot.gov/sites/fmcsa.dot.gov/files/2024-01/Medical%20Examiner%27s%20Handbook%202024%20Edition_0.pdf [https://perma.cc/YJ2C-EC45].

that may or may not have factored into Short's physical examination implicates factual disputes that cannot be resolved now. Defendant's requests for judicial notice of the company's PACE Contract, DOT registration, and the FMCSA's medical handbook are denied.

### III. Analysis

The Genetic Information Privacy Act regulates the use and disclosure of genetic information. 410 ILCS 513/5(2); *see also Bridges v. Blackstone, Inc.*, 66 F.4th 687, 688 (7th Cir. 2023). The Illinois General Assembly amended GIPA in 2008 to mirror provisions of the federal Genetic Information Nondiscrimination Act applying to employers. *See* 410 ILCS 513/25(a) ("An employer… shall treat genetic testing and genetic information in such a manner that is consistent with the requirements of federal law, including but not limited to [the Genetic Information Nondiscrimination Act of 2008].") *and* 42 U.S.C. § 2000ff–1. Under Section 25(c)(1) of GIPA, an employer may not "solicit, request, [or] require… genetic information of a person or a family member of the person… as a condition of employment [or] preemployment application." 410 ILCS 513/25(c)(1). GIPA's definition of "genetic information" is borrowed from the Health Insurance Portability and Accountability Act. *Id.* at 513/10. Genetic information includes, 45 C.F.R § 160.103:

    (i)    The individual's genetic tests;
    (ii)   The genetic tests of family members of the individual;
    (iii)  The manifestation of a disease or disorder in family members of such individual; or
    (iv)  Any request for, or receipt of, genetic services, or participation in clinical research which includes genetic services, by the individual or any family member of the individual.

Section 40 provides a private right of action for "any person aggrieved" by a violation of the Act. 410 ILCS 513/40(a).

The parties do not dispute that Section 25(c)(1) of the Act applies to MV Transportation's oral request for Short's family medical history.[7] The only dispute is whether the Department of Transportation's federal regulations setting minimum standards for drivers' physical qualifications preempt Short's GIPA claims. [26] at 7–12. Defendant raises conflict preemption, arguing that motor carriers must choose between abiding by GIPA's prohibition or complying with federal requirements to "conduct[] thorough physical examinations of its drivers."[8] [26] at 10; [34] at 2.

Federal law preempts any conflicting state law. *Arizona v. United States*, 567 U.S. 387, 399 (2012). "Invoking some brooding federal interest" is insufficient to establish preemption; instead, MV Transportation must identify "a constitutional text or a federal statute" that displaces or conflicts with the state law. *Virginia Uranium, Inc. v. Warren*, 587 U.S. 761, 767 (2019). Conflict preemption applies where "compliance with both federal and state regulations is a physical impossibility" or

---

[7] The EEOC's regulations interpreting the federal statute equate the term "family medical history" with the "manifestation of disease or disorder" in an individual's family members. 29 C.F.R § 1635.3(b) ("Family medical history means information about the manifestation of disease or disorder in family members of the individual."). Plaintiff alleges defendant asked, "whether [his] family members had a history of high blood pressure, heart disease, diabetes, or other medical conditions," [23] ¶ 28, and defendant does not dispute that this constitutes a request for protected genetic information under GIPA.

[8] Plaintiff argues in his response brief that express and field preemption do not apply. [31] at 8–12. Defendant clarifies in its reply brief that it raises conflict preemption, [34] at 2, so I focus on conflict preemption, recognizing that the categories of preemption "are not rigidly distinct." *Crosby v. National Foreign Trade Council*, 530 U. S. 363, 372 n.6 (2000) (internal quotation marks omitted).

where the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Arizona*, 567 U.S. at 399 (citations omitted). Congressional intent is the "ultimate touchstone" of any preemption analysis. *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (citation omitted). The burden is on MV Transportation to overcome the presumption against preemption. *See Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1049 (7th Cir. 2013); *Wyeth*, 555 U.S. at 565 (recognizing the presumption that federal law does not supersede the "historic police powers" of states absent "the clear and manifest purpose of Congress").

Under the Motor Carrier Safety Act, the Department of Transportation regulates commercial motor vehicle safety by promulgating "minimum safety standards" to ensure, among other things, that "the physical condition of operators… is adequate to enable them to operate the vehicles safely." 49 U.S.C. § 31136(a)(3) (Congressional delegation of rulemaking authority to the Secretary of Transportation); 49 C.F.R. § 1.87(f) (Secretary's delegation of rulemaking authority to the Federal Motor Carrier Safety Administration). This portion of the enabling statute does not contain an express preemption provision, but it directs the Secretary to "consider… State laws and regulations on commercial motor vehicle safety, to minimize their unnecessary preemption."[9] 49 U.S.C. § 31136(c)(2)(B).

---

[9] The Secretary is authorized to preempt state laws following a multi-step process. *See* 49 U.S.C. § 31141; *Int'l Bhd. of Teamsters, Loc. 2785 v. Fed. Motor Carrier Safety Admin.*, 986 F.3d 841, 846 (9th Cir. 2021) ("The Act [] gives the Secretary the express power to preempt State law."). If the FMCSA issues a preemption decision, "[a] State may not enforce a State law or regulation on commercial motor vehicle safety." 49 U.S.C. § 31141(a). Defendant cites

Under the FMCSA's regulations, a driver must be physically qualified to operate a commercial motor vehicle. *See* 49 C.F.R. § 391.41(a)(1)(i), (ii) (identifying medical-variance exemption). There are thirteen physical qualification criteria. *Id.* § 391.41(b). For example, a physically qualified driver "[h]as no current clinical diagnosis of myocardial infarction, angina pectoris, coronary insufficiency, thrombosis, or any other cardiovascular disease of a variety known to be accompanied by syncope, dyspnea, collapse, or congestive cardiac failure." *Id.* § 391.41(b)(4). None of the requirements listed in § 391.41(b) reference family medical history—they refer only to a driver's "current clinical diagnos[es]" or "established medical history." *Id.* § 391.41(b)(3)–(8), (12)–(13). A medical examiner (listed on the National Registry of Certified Medical Examiners) must perform a medical examination certifying that a driver is physically qualified. *Id.* §§ 391.41(a), 391.43(a). They must also "[b]e knowledgeable of the specific physical and mental demands associated with operating a commercial motor vehicle and the requirements… including the medical advisory criteria prepared by the FMCSA as guidelines to aid the medical examiner in making the qualification determination." *Id.* § 391.43(c)(1); Pt. 391, App. A ("Medical Advisory Criteria). The results must be recorded on a "Medical Examination Report Form." 49 C.F.R. § 391.43(f); *see also* [27] (Short's Medical Examination Report Form). The form does not contain a section or provision related to family medical history. *See* 49 C.F.R. § 391.43(f).

---

to *Int'l Bhd. of Teamsters, Loc. 2785*, 986 F.3d 841, 848 (9th Cir. 2021), but that case involved the FMCSA's determination that California's meal or rest break laws were preempted by federal regulations. [26] at 11. There's no agency finding of preemption here.

The regulations do not require a medical examiner to solicit family medical history during a medical examination or record a driver's family medical history when filling out the Medical Examination Report Form. MV Transportation concedes that "the medical qualifications process contains no specific inquiries likely to elicit family medical history," but asserts that it is "plainly contemplated that medical examiners may discuss and make inquiries" to conduct a physical examination that complies with the federal standards. [26] at 10. That's not enough to suggest that compliance with GIPA and the federal regulations is "physically impossible." *Arizona*, 567 U.S. at 399. The mere possibility that a medical examiner asks for information protected by GIPA while performing an examination does not demonstrate impossibility to comply with both federal and state law. "Conflict preemption requires complete impossibility—not mere inconvenience or hardship." *Patriotic Veterans*, 736 F.3d at 1050. A medical examiner might have to exercise caution to limit questions to an individual's medical diagnoses or conditions, but it's possible for them to comply with GIPA's prohibition on genetic information *and* evaluate a driver's physical qualifications in compliance with regulatory requirements. The regulations require a medical examiner to solicit certain medical information, but they don't explicitly require a medical examiner to solicit the narrow category of information protected by GIPA.

Even if it would be appropriate to consider the FMCSA's medical examiner handbook at this stage, nothing in the handbook advises medical examiners that asking about family medical history is necessary to conduct a federally compliant

9

physical qualification determination. *See, e.g.*, Medical Examiner Handbook 61–62 (listing "family history of epilepsy" as a risk factor but advising, "[w]hen an individual has had a single unprovoked nonepileptic seizure that was treated with antiseizure medication or left untreated, the ME may certify the individual if the individual is both off antiseizure medication and seizure free for 5 years of more"). In fact, the handbook states that, "MEs are subject to applicable Federal and State medical privacy laws regarding information provided during a physical examination." *Id.* at 6. MV Transportation also cites to the American Medical Association's advice on collecting family history to identify patients with a higher risk for a disease. [34] at 9. But the relevant inquiry is not whether medical best practices require a doctor to collect family medical history for treatment purposes—it's whether the federal regulations mandate it. There's nothing in the FMCSA's regulations requiring a medical examiner to ask drivers for GIPA-protected genetic information. Compliance with both federal regulations and GIPA is possible. *Cf. Crumpton v. Octapharma Plasma, Inc.*, 513 F.Supp.3d 1006, 1013 (N.D. Ill. 2021) (finding the federal Food, Drug, and Cosmetic Act did not preempt Illinois's Biometric Information Privacy Act because the state statute "applies only when an entity collects biometric information" while the FDCA "does not require [defendant] to collect or use biometric information").

Nor does MV Transportation demonstrate that GIPA "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hillman v. Maretta*, 569 U.S. 483, 490 (2013) (quoting *Hines v. Davidowitz*, 312 U.S.

52, 67 (1941)). The purposes of the Motor Carrier Safety Act are to: (1) "promote the safe operation of commercial motor vehicles"; (2) "minimize dangers to the health of operators of commercial motor vehicles"; and (3) "ensure increased compliance with traffic laws and with the commercial motor vehicle safety and health regulations and standards." 49 U.S.C. § 31131(a). MV Transportation also points to the FMCSA's mandate to "consider the assignment and maintenance of safety as the highest priority, recognizing the clear intent, encouragement, and dedication of Congress to the furtherance of the highest degree of safety in motor carrier transportation." 49 U.S.C. § 113. MV Transportation argues GIPA stands as an obstacle "the agency's accomplishment and execution." [34] at 10. Preemptive purpose must be "sought in the text and structure of the statute at issue." *Virginia Uranium*, 587 U.S. at 778. GIPA's protection of sensitive genetic information would not do "major damage" to the statutory objectives of motor vehicle safety. *See McHenry Cnty. v. Kwame Raoul*, 44 F.4th 581, 591 (7th Cir. 2022). GIPA's focus on health information privacy, *see* 410 ILCS 513/5(5), and the DOT's regulations on driver safety also serve different purposes. *Cf. In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 101 (2d Cir. 2013) ("A showing that the federal and state laws serve different purposes cuts against a finding of obstacle preemption."). MV Transportation doesn't meet its burden to show obstacle preemption applies.

MV Transportation cites to *Big Ridge, Inc. v. Fed. Mine Safety & Health Rev. Comm'n*, 715 F.3d 631 (7th Cir. 2013), a case discussing federal preemption of GIPA in the context of medical information requests. [26] at 11–12. The mine operators and

11

miners in *Big Ridge* challenged the Mine Safety and Health Administration's demands for employee medical and personnel records. 715 F.3d at 633–34, 36–37. The MSHA promulgated regulations under the Mine Safety Act requiring mines to report "accidents, injuries, and occupational illnesses," and submit such reports to the agency upon request. *Id.* at 635 (citing 30 U.S.C. § 813 and 30 C.F.R. § 50.41). The court rejected the petitioners' argument that Indiana's and Illinois's privacy laws "require mine operators to keep employee medical files confidential" and that "complying with MSHA orders to permit its agents to inspect and copy such files would expose employers to liability." *Id.* at 657 (citing 410 ILCS 513/15). The court held that any "alleged conflicts" raised by state privacy laws like GIPA would be subject to the preemption clause in the Mine Safety Act.[10] *Id.* (citing 30 U.S.C. § 955(a)). "In the event that an employer in [Illinois] is required to permit MSHA agents to inspect and copy medical records that these laws deem 'confidential,' MSHA's order directing the mine operator to permit the inspection and copying would preempt the state law." *Id.* Here, MV Transportation does not identify any similar exemption provision in the Motor Carrier Safety Act. The court's reasoning in *Big Ridge* is inapplicable. It's also worth noting that *Big Ridge* involved a different provision of GIPA deeming genetic information as confidential and privileged and

---

[10] The court considered the following provision in the Mine Safety Act: "No State law in effect on December 30, 1969 or which may become effective thereafter shall be superseded by any provision of this chapter or order issued or any mandatory health or safety standard, except insofar as such State law is in conflict with this chapter or with any order issued or any mandatory health or safety standard." *Big Ridge*, 715 F.3d at 657 (citing 30 U.S.C. § 955(a)).

prohibiting release of the information unless specifically authorized. *See* 410 ILCS 513/15(a). The nature of the requests for medical information is different in this regulatory context. In *Big Ridge*, the MSHA orders required mine operators to share employees' medical and personnel files with the agency. 715 F.3d at 636. As discussed above, there's nothing in the FMCSA's regulations that require medical examiners to ask about—or require drivers like Short to report—GIPA-protected information during a physical examination.[11]

In sum, MV Transportation does not demonstrate that GIPA makes it impossible to comply with the DOT's regulations or that the state statute stands as an impermissible "obstacle" to Congressional purpose. Defendant's motion to dismiss based on conflict preemption is denied.

## IV. Conclusion

Defendant's motion to dismiss, [26], is denied. The parties shall file a joint status report proposing a case schedule by March 31, 2025.

ENTER:

                                                       Manish S. Shah
                                                       United States District Judge

Date: March 10, 2025

---

[11] I'm also not persuaded by defendant's citation to cases analyzing the application of DOT regulations to the Americans with Disabilities Act. *See* [26] at 11. In *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555 (1999), for example, the Court considered whether an employer must justify its reliance on the FMCSA's visual acuity standard to establish a defense for an ADA discrimination claim. *See* 42 U.S.C. § 12113(a). The interplay between the ADA's statutory exceptions and federal safety regulations is not at issue here.